UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

v.

KEONNE RODRIGUEZ and
WILLIAM LONERGAN HILL,

Defendants.

**SEALED SUPERSEDING INDICTMENT**

S2 24 Cr. 82

**COUNT ONE**
**(Conspiracy to Commit Money Laundering)**

The Grand Jury charges:

**OVERVIEW**

1. From at least in or about 2015 through at least in or about February 2024, in the Southern District of New York and elsewhere, KEONNE RODRIGUEZ and WILLIAM LONERGAN HILL, the defendants, developed, marketed, and operated a cryptocurrency mixing service known as Samourai Wallet ("Samourai"), an unlicensed money transmitting business from which they earned millions of dollars in fees. Samourai unlawfully combined multiple unique features to execute anonymous financial transactions valued at over $2 billion in cryptocurrency for its customers. While offering Samourai as a "privacy" service, the defendants knew that it was a haven for criminals to engage in large-scale money laundering and sanctions evasion. Indeed, as the defendants intended and well knew, a substantial portion of the funds that Samourai processed were criminal proceeds passed through Samourai for purposes of concealment. Indeed, during the relevant period, Samourai laundered over $100 million dollars of crime proceeds originating from, among other criminal sources: illegal darkweb markets, such as Silk Road and Hydra Market; various wire fraud and computer fraud schemes, including a web-server intrusion,

a spear phishing scheme, and schemes to defraud multiple decentralized finance protocols; and other illegal activities.

2.      At all times relevant to this Indictment, KEONNE RODRIGUEZ, the defendant, was a Co-Founder and Chief Executive Officer of Samourai. RODRIGUEZ is a United States citizen who at all relevant times resided in either Florida, Pennsylvania, or the United Kingdom.

3.      At all times relevant to this Indictment, WILLIAM LONERGAN HILL, the defendant, was a Co-Founder and Chief Technology Officer for Samourai. HILL is a United States citizen who at all relevant times resided in France.

### **Background on Bitcoin**

4.      "Cryptocurrency," also known as "digital currency," is a digital representation of value that can be traded, and functions as a medium of exchange, a unit of account, and a store of value.

5.      Bitcoin ("BTC") is a type of cryptocurrency. Bitcoins are not issued by a government, bank, or company, but rather are electronically generated, transacted, and tracked through computer software operating on a decentralized "peer-to-peer" network.

6.      Bitcoins can typically be acquired by purchasing them from a Bitcoin "exchange." An individual can also acquire Bitcoin through "mining," which is the way new Bitcoin is produced and the way Bitcoin transactions are verified.

7.      When a user acquires Bitcoins, the Bitcoins are sent to the user's Bitcoin "address," analogous to a bank account number, which is designated by a string of letters and numbers. The user can then conduct transactions with other Bitcoin users by transferring Bitcoins to their Bitcoin addresses via the Internet. To authorize a transfer of Bitcoins from an address, a user must use his or her "private key," or password, to conduct the Bitcoin transaction. A user may have multiple

Bitcoin addresses and corresponding private keys, which are frequently stored in a user's Bitcoin "wallet."

8. All transfers of Bitcoins between different Bitcoin addresses are recorded on a public online ledger known as the "Blockchain."

**Background on Samourai**

9. KEONNE RODRIGUEZ and WILLIAM LONERGAN HILL, the defendants, began developing Samourai in or about 2015. Samourai is a mobile application that users can download onto their cellphones, and the application has been downloaded over 100,000 times. After users download Samourai, they can store their private keys for any BTC addresses they control inside of the Samourai program. These private keys are not shared with Samourai employees, but as further discussed below, Samourai operates a centralized server that, among other things, supervises and facilitates transactions between Samourai users and creates new BTC addresses used during the transactions. Samourai is used by customers all over the world, including customers located in the United States and in the Southern District of New York.

10. KEONNE RODRIGUEZ and WILLIAM LONERGAN HILL, the defendants, designed Samourai to offer at least two features intended to assist individuals engaged in criminal conduct to conceal the source of the proceeds of their criminal activities: First, Samourai offers a cryptocurrency mixing service known as "Whirlpool," which coordinates batches of cryptocurrency exchanges between groups of Samourai users to prevent tracing of criminal proceeds by law enforcement on the Blockchain. Second, Samourai offers a service called "Ricochet," which allows a Samourai user to build in additional and unnecessary intermediate transactions (known as "hops") when sending cryptocurrency from one address to another address. This feature similarly may prevent law enforcement and/or cryptocurrency exchanges from

3

recognizing that a particular batch of cryptocurrency originates from criminal activity. Since the start of the Whirlpool service in or about 2019, and of the Ricochet service in or about 2017, over 80,000 BTC (worth over $2 billion applying the BTC-USD conversion rates at the time of each transaction) has passed through these two services operated by Samourai. Samourai collects a fee for both services, estimated to be about $3.4 million for Whirlpool transactions and $1.1 million for Ricochet transactions over the same time period.

11. At all relevant times, KEONNE RODRIGUEZ and WILLIAM LONERGAN HILL, the defendants, exercised control over Samourai, including arranging for the payment of necessary expenses – including web hosting services and fees to the Google Play Store – to allow Samourai to be available to users, including in the United States.

### Background on Whirlpool

12. To use the "Whirlpool" feature, which was introduced by Samourai in or around April 2019, a Samourai user selects an amount of BTC that they wish to mix and the pool in which they would like to mix that BTC. Each pool is designed to accept BTC in a set increment and a flat fee to contribute BTC to the pool generally ranging from 3.5 percent to 5 percent of the amount of BTC entering the pool. Samourai currently offers four different pools, with denominations of approximately 0.001 BTC, 0.01 BTC, 0.05 BTC, and 0.5 BTC.[1] As of February 2024, the fees for each of the pools was as follows:

| Pool | Pool Fee |
|---|---|
| 0.001 BTC | 0.00005 BTC (5%) |
| 0.01 BTC | 0.0005 BTC (5%) |

---

[1] These pool sizes are approximate, as the exact denominations of BTC inputs include mining fees that are necessary to broadcast transactions to the blockchain. So for example, the exact amount of an input into the 0.001 BTC pool could be 0.001000302 BTC.

| | |
|---|---|
| 0.05 BTC | 0.00175 BTC (3.5%) |
| 0.5 BTC | 0.0175 BTC (3.5%) |

13. The "Whirlpool" feature functions as follows:

a. First, once a user has contributed cryptocurrency from their Samourai wallet to be sent into the Whirlpool, the cryptocurrency is "cut down" into the correct sizes for a chosen pool. Samourai also collects its fee and the mining fees from the transaction, and then the funds wait to join a mix. For example, if a user wishes to contribute 1 BTC into the 0.05 BTC pool, the Samourai software on the user's cellphone will broadcast a transaction to the blockchain transferring 1 BTC into 19 addresses, each containing approximately 0.05 BTC (plus the mining fees necessary for broadcasting the subsequent transactions to the blockchain). Each of these 19 addresses containing approximately 0.05 BTC will serve as an "input" in a Whirlpool transaction. Additionally, the broadcasted transaction will send Samourai's fees from the user to an address designated by the Samourai software. Any leftover funds from this transaction that are too small to enter the Whirlpool are placed in a separate address and provided back to the Samourai user.

b. Second, through a centralized coordinator server that Samourai operates, the Samourai application on a user's cellphone communicates with other Samourai users, and Samourai's coordinator server randomly selects four other inputs already in the selected pool to be mixed with the new incoming input and communicates that information to each user. The Samourai application on each user's cellphone then broadcasts a transaction to the Blockchain in which all five inputs (each a separate address) are then transferred to five outputs (each a separate address). Samourai automatically generates the new addresses that are used as inputs and outputs throughout the process on behalf of the users, although the private keys for these cryptocurrency addresses are stored in each user's individual cellphone and not shared with Samourai's

5

employees. Below is a graphical representation posted on Samourai's website of the five input and five output transaction:



If, for example, as set forth above, 1 BTC enters the 0.05 BTC pool, each new unit of 0.05 BTC contributed by the user into the 0.05 BTC pool will combine with four other units of 0.05 BTC already in the pool from up to four other users to engage in a five-input-five-output transaction.

        c.        Finally, after the mix is complete, Samourai will continue to automatically mix the outputs with other batches of cryptocurrency that are in the same pool indefinitely as new cryptocurrency enters the pool, until a user chooses to remove their cryptocurrency from the Whirlpool. In other words, each time a transaction in the Whirlpool occurs, one new input and

6

four old inputs already in a pool will engage in a five-input-five-output transaction. All of these transactions are coordinated by Samourai's server. Samourai incentivizes users to keep their cryptocurrency in the Whirlpool (and therefore generate additional liquidity in the pool) by making subsequent remixes free. Mining fees for the broadcasting of these cryptocurrency transactions are covered by new BTC inputs entering the pool. Samourai's Whirlpool feature has generated over $3 million in fees for Samourai—the large majority of which are also stored in the Whirlpool as a source of additional liquidity.

### Background on Ricochet

14.     KEONNE RODRIGUEZ and WILLIAM LONERGAN HILL, the defendants, caused the Samourai website to tout the fact that its Ricochet feature could assist customers in further obfuscating the link between customers' deposits and withdrawals. In particular, the Samourai website described the Ricochet feature as a "premium tool that adds extra hops of history to your transaction" and would allow customers to "[s]tump the blacklists and help guard against unjust 3rd party account closures."[2] RODRIGUEZ and HILL designed the "Ricochet" feature to allow a Samourai user to build in additional and unnecessary intermediate transactions (known as "hops") when sending cryptocurrency from one address to another address in order to further obscure ownership of the funds.

15.     To use the Ricochet feature, which was introduced by Samourai in or around 2017, a Samourai user selects an amount of BTC that they wish to send, and the destination address where it is to be sent. The user can also decide whether they want the Ricochet transaction to

---

[2] "Blacklists" are lists of cryptocurrency addresses known to be associated with sanctioned entities and known criminal activity frequently used by cryptocurrency exchanges to block particular transactions from occurring. For example, the United States Treasury Department's Office of Foreign Asset Controls maintains lists of cryptocurrency addresses known to be linked to criminal activities or other threats to the national security, foreign policy, or economy of the United States.

7

occur instantly or spread out over a designated amount of time. A server run by the Samourai developers (who worked at the direction of KEONNE RODRIGUEZ and WILLIAM LONERGAN HILL, the defendants) provides an address where Samourai's fees are received prior to the execution of the series of Ricochet transactions. The Samourai application then creates the series of BTC transactions for each Ricochet, including the creation of new addresses, which are transmitted to a server run by Samourai. The Samourai server is responsible for broadcasting the Ricochet transactions to the BTC network. As with the Whirlpool feature, Samourai automatically generates the new cryptocurrency addresses that are used for these transactions, although the private keys for these addresses are stored in each user's individual cellphone and not shared with Samourai's employees. Samourai's Ricochet feature has generated over $1 million in fees for Samourai—the large majority of which were then laundered through Samourai's Whirlpool feature. From Whirlpool and Ricochet, RODRIGUEZ and HILL earned at least $4 million in fees.

### RODRIGUEZ and HILL's Knowledge and Intent for Criminal Proceeds to Be Laundered by Samourai

16. KEONNE RODRIGUEZ and WILLIAM LONERGAN HILL, the defendants, operated Twitter (which changed its name to "X" in July 2023) accounts that encouraged and openly invited users to launder criminal proceeds through Samourai. For example, in or around June 2022, Samourai's Twitter account—operated by RODRIGUEZ—posted the following message regarding Russian oligarchs seeking to circumvent sanctions:



17. Similarly, in a private message on or about August 27, 2020, WILLIAM LONERGAN HILL, the defendant—using an Twitter account with the username "Samourai Dev"—discussed the use of Samourai by criminals operating in online black markets such as Silk Road in private messages with another Twitter user (the "Twitter User") (emphasis added):

| | |
|---|---|
| **Twitter User**: | Silk Road is why I first found Bitcoin and the desire to keep engaging in those types of markets is one reason that I want to defend/strengthen those use cases . . . |
| **Samourai Dev**: | No, not at all. We probably have different views on some basic tenets of bitcoin, you and I – so to each his own so to speak. At Samourai we are entirely focused on the censorship resistance and black/grey circular economy. This implies no foreseeable mass adoption, although black/grey markets have already started to expand during covid and will continue to do so post-covid. . . . |

18. Additionally, in response to Europol highlighting Samourai as a "top threat" to the ability of law enforcement to trace the proceeds of criminal activity, WILLIAM LONERGAN HILL, the defendant, posted a message in or around March 2021 suggesting that Samourai would not change its practices in response to allegations that Samourai was being used for money laundering:

9



19. Similarly, KEONNE RODRIGUEZ and WILLIAM LONERGAN HILL, the defendants, possessed and transmitted to potential investors marketing materials, such as those excerpted below, that discussed how Samourai's customer base was intended to include criminals seeking privacy or the subversion of safeguards and reporting requirements by financial institutions. For example, in the below excerpt from Samourai's marketing materials, KEONNE RODRIGUEZ and WILLIAM LONERGAN HILL, the defendants, similarly acknowledge that the individuals most likely to use a service like Samourai ("Who is willing to pay for privacy?") include individuals engaged in criminal activities, including "Restricted Markets."

## Who is willing to pay for privacy?

| | |
|---|---|
| Online Gambling | **$28.54 B** - global market value. <br> *SoftSwiss Platform* - **$10m / month** <br> Largest % of on-chain transaction volume |
| Restricted Markets | **$237.25 M** - amount transacted in 2014 |
| Asset Protection | **$1.5 B** - amount held in the top 100 bitcoin addresses |

20. In the below excerpt from Samourai's marketing materials, KEONNE RODRIGUEZ and WILLIAM LONERGAN HILL, the defendants, acknowledge that its revenues will be derived from "Dark/Grey Market participants" seeking to "swap their bitcoins with multiple parties" to avoid law enforcement detection:

### Revenue

**Samourai Premium Add Ons**

| | |
|---|---|
| Online Gamblers | **On Demand Swap** |
| Dark/Grey Market participants | Users can swap their bitcoins with multiple parties to destroy the metadata that has been created. |
| Ultra High Net Worth Individuals | 0.1% of the amount transacted + 0.0005 BTC flat fee |
| Asset Protection/Capital Flight | **User Monthly Value**<br>*Assumption*: 2 Swaps of 1.00 BTC a month: £7.80 |

21. In the below excerpt from Samourai's marketing materials, KEONNE RODRIGUEZ and WILLIAM LONERGAN HILL, the defendants, promoted Samourai's Wallet and its "Mixing Service" as a "Premium Privacy Service" for transactions involving the proceeds of goods and services that include, among other things, "Illicit Activity":

11



### The Defendants' Failure to Implement BSA-Compliant Know Your Customer and Anti-Money Laundering Programs

22. Under federal law, all money transmitting businesses, including businesses engaged in the transmission of cryptocurrencies such as BTC, are required to register with the United States Department of the Treasury's Financial Crimes Enforcement Network ("FinCEN"). Money transmitting businesses are also required to comply with certain aspects of the Bank Secrecy Act, such as filing reports of suspicious transactions, *see* 31 U.S.C. § 5318(g); 31 C.F.R. § 1022.320(a); and implementing an effective anti-money-laundering ("AML") program, *see* 31 C.F.R. § 1022.210. An effective AML program is described as "one that is reasonably designed to prevent the money services business from being used to facilitate money laundering and the financing of terrorist activities." 31 C.F.R.§ 1022.210(a). Under the regulations, an AML program must, at a minimum, "[i]ncorporate policies, procedures, and internal controls reasonably designed to assure compliance" with a money service business's obligations to verify customer identification, file reports, create and retain records, and respond to law enforcement requests. 31

12

C.F.R. § 1022.210(d)(1). The obligation to verify customer identification is frequently referred to as a "know your customer," or "KYC," requirement.

23. KEONNE RODRIGUEZ and WILLIAM LONERGAN HILL, the defendants, owned, controlled, managed, and supervised Samourai, which was engaged in the business of transferring funds on behalf of the public. However, neither Samourai, nor any of the Samourai founders, was registered with FinCEN as a money transmitting business at any point during the charged period.

24. KEONNE RODRIGUEZ and WILLIAM LONERGAN HILL, the defendants, intentionally did not establish an effective AML program or engage in any KYC efforts for Samourai. To the contrary, RODRIGUEZ and HILL advertised and promoted the fact that Samourai's customers could use the Whirlpool or Ricochet functions without providing any identifying information to Samourai. As discussed below, this deliberate failure to implement AML/KYC facilitated the transferring of criminal proceeds by Samourai's customers without being traced. Samourai's failure to implement AML/KYC also encouraged and enabled its customers to engage in transactions meant to conceal the nature, location, source, ownership, and control of criminal proceeds.

25. Indeed, as is described above, KEONNE RODRIGUEZ and WILLIAM LONERGAN HILL, the defendants, specifically promoted Samourai for its ability to allow customers to engage in anonymous transactions. For example, in the Twitter message below, HILL touted the fact that Samourai had no KYC and no terms and conditions ("T&C") governing the use of Samourai:

TDevD [No KYC, no T&C, no ] @SamouraiDev

26. KEONNE RODRIGUEZ and WILLIAM LONERGAN HILL, the defendants, also promoted Samourai's lack of KYC procedures on Samourai's website. For example, Samourai's website promoted Samourai as a "modern bitcoin wallet hand forged to keep your transactions private your identity masked and your funds secured." Samourai claimed that its application allowed users to "[b]e your own Swiss Bank . . . No email address, no ID checks, and no hassle."

### Samourai Was a Vehicle for Money Laundering

27. The Whirlpool and Ricochet features offered by KEONNE RODRIGUEZ and WILLIAM LONERGAN HILL, the defendants, enabled Samourai users to launder criminal proceeds by concealing the criminal source of the funds and making it difficult for law enforcement to trace the funds to their illicit source. Moreover, RODRIGUEZ and HILL's operation of Samourai without an AML or KYC program ensured that the criminal actors laundering high volumes of criminal proceeds through Samourai would remain anonymous. Because Samourai provided its customers with a method to engage in transactions and move funds on the BTC blockchain in ways that prevented tracing on the public blockchain, not all of the funds passing through the Samourai Whirlpool and Ricochet can be attributed to particular actors. However, at a minimum, at least $100 million in criminal proceeds were laundered through the Samourai Whirlpool and Ricochet services between its launch in or about 2015 and in or about December 2023. Despite knowing full well that Samourai was being used to launder criminal proceeds, and that Samourai's Whirlpool and Ricochet features were being used for the purposes of concealing criminal proceeds, RODRIGUEZ and HILL took no steps to implement effective AML or KYC programs. To the contrary, Samourai has described itself on its website as a group of "privacy activists who have dedicated our lives to creating the software that Silicon Valley will never build, the regulators will never allow, and the VC's [venture capitalists] will never invest in."

28.     The over $100 million dollars of crime proceeds laundered through Samourai include, among other criminal sources:

a.      From at least in or about May 2021 up to and including in or about 2023, over 1,500 BTC of crime proceeds from the Silk Road darknet market ("Silk Road"), a well-known online black market that was in operation from approximately 2011 until 2013 and was used by numerous drug dealers and other unlawful vendors to distribute massive quantities of illegal drugs and other illicit goods and services and to launder funds passing through it. This large cache of criminal proceeds from the Silk Road largely sat dormant between in or around 2013, when the market was taken down by law enforcement, until in or around May 2021, when the controller of the proceeds laundered the BTC through Samourai.

b.      From at least in or about February 2022 up to and including in or about May 2022, approximately 151 BTC of crime proceeds from a web server intrusion, in which a customer database was exfiltrated.

c.      From at least in or about 2021 up to and including in or about 2022, approximately 153 BTC of crime proceeds from a spear phishing scheme to compromise the servers of a cloud-service provider, compromise the virtual private server accounts of corporate clients of the cloud-service provider, and steal cryptocurrency then valued at approximately $10 million from victim entities, which hosted their infrastructure with the cloud-service provider.

d.      From at least in or about 2021 up to and including in or about 2023, approximately 1,343 BTC of crime proceeds from a phishing attack on a decentralized finance protocol.

e.      In or about October 2020, approximately 44 BTC of crime proceeds from Hydra Market, a Russian-language darknet market launched in 2015 that enabled users to buy and

sell illegal drugs, fraudulent documents, stolen financial information, and money laundering and mixing services. In 2021, Hydra Market accounted for an estimated 80% of all darknet market-related cryptocurrency transactions, and since 2015, the marketplace received approximately $5.2 billion in cryptocurrency.

   f. From at least in or about July 2022 up to and including in or about 2023, approximately 49 BTC of crime proceeds from a scheme to defraud a decentralized finance protocol which shut down following the hack.

## STATUTORY ALLEGATIONS

   29. From at least in or about 2015 up to and including in or about February 2024, in the Southern District of New York and elsewhere, KEONNE RODRIGUEZ and WILLIAM LONERGAN HILL, the defendants, and others known and unknown, willfully and knowingly combined, conspired, confederated, and agreed together and with each other to commit money laundering, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

   30. It was a part and an object of the conspiracy that KEONNE RODRIGUEZ and WILLIAM LONERGAN HILL, the defendants, and others known and unknown, knowing that the property involved in a financial transaction represented the proceeds of some form of unlawful activity, would and did conduct and attempt to conduct such a financial transaction, which transaction affected interstate and foreign commerce and involved the use of a financial institution which was engaged in, and the activities of which affected, interstate and foreign commerce, and which in fact involved the proceeds of specified unlawful activity, to wit, (i) wire fraud, in violation of Title 18, United States Code, Section 1343, and (ii) computer fraud and abuse, in violation of Title 18, United States Code, Section 1030, knowing that the transaction was designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership, and the

control of the proceeds of specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

(Title 18, United States Code, Section 1956(h).)

## COUNT TWO
### (Conspiracy to Operate an Unlicensed Money Transmitting Business)

The Grand Jury further charges:

31. The allegations contained in paragraphs 1 through 28 of this Indictment are repeated and realleged as if fully set forth herein.

32. From at least in or about 2015 up to and including in or about February 2024, in the Southern District of New York and elsewhere, KEONNE RODRIGUEZ and WILLIAM LONERGAN HILL, the defendants, and others known and unknown, willfully and knowingly combined, conspired, confederated, and agreed together and with each other to commit an offense against the United States, to wit, operation of an unlicensed money transmitting business, in violation of Title 18, United States Code, Sections 1960(b)(1)(B) and (b)(1)(C).

33. It was a part and object of the conspiracy that KEONNE RODRIGUEZ and WILLIAM LONERGAN HILL, the defendants, and others known and unknown, would and did knowingly conduct, control, manage, supervise, direct, and own all and part of an unlicensed money transmitting business, which affected interstate and foreign commerce, and (i) failed to comply with the money transmitting business registration requirements under Section 5330 of Title 31, United States Code, and regulations prescribed under such section, and (ii) otherwise involved the transportation and transmission of funds that were known to the defendants to have been derived from a criminal offense and were intended to be used to promote and support unlawful activity, to wit, RODRIGUEZ and HILL conducted, controlled, managed, supervised, directed, and owned all or part of Samourai, a business that transferred funds on behalf of the public, without

meeting the Federal registration requirements set forth for money transmitting businesses, and knowing that the business involved the transportation and transmission of funds that were derived from a criminal offense and were intended to be used to promote and support unlawful activity.

### Overt Acts

34. In furtherance of the conspiracy, and to effect the illegal object thereof, the following overt acts, among others, were committed in the Southern District of New York and elsewhere:

    a. Between in or around 2015 and in or around December 2023, KEONNE RODRIGUEZ and WILLIAM LONERGAN HILL, the defendants, participated in marketing activities on behalf of Samourai to potential customers through social media and email communications, with the knowledge and intent that Samourai would be used for the transportation and transmission of funds derived from criminal activity.

        i. For example, on or about June 30, 2022, RODRIGUEZ posted a message on Samourai's Twitter account: "Welcome new Russian oligarch Samourai Wallet users" in response to an article discussing international sanctions on certain Russian oligarchs.

        ii. Similarly, on or about March 16, 2020, HILL posted a message on a Twitter account with username @SamouraiDev: "Europol also highlighted Samourai Wallet as an emerging 'top threat' . . . Do you see us shitting in our pants?"

    b. On or about October 11, 2022, Samourai engaged in the unlicensed receipt and transmission of funds, including funds deposited into a Samourai wallet by an undercover law enforcement agent located in the Southern District of New York.

(Title 18, United States Code, Section 371.)

## FORFEITURE ALLEGATIONS

35.     As a result of committing the offenses alleged in Counts One and Two of this Indictment, KEONNE RODRIGUEZ and WILLIAM LONERGAN HILL, the defendants, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(1), any and all property, real and personal, involved in said offenses, or any property traceable to such property, including but not limited to a sum of money in United States currency representing the amount of property involved in said offenses.

### Substitute Asset Provision

36.     If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

   a.   cannot be located upon the exercise of due diligence;

   b.   has been transferred or sold to, or deposited with, a third person;

   c.   has been placed beyond the jurisdiction of the Court;

   d.   has been substantially diminished in value; or

   e.   has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p) and Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of the defendants up to the value of the above forfeitable property.

(Title 18, United States Code, Sections 981 and 982;
Title 21, United States Code, Section 853; and
Title 28, United States Code, Section 2461.)

FOREPERSON

DAMIAN WILLIAMS
United States Attorney

19