

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

Jacob K. Javits Federal Building
26 Federal Plaza, 37th Floor
New York, New York 10278

September 17, 2024

**BY CM/ECF**
The Honorable Richard M. Berman
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

    Re:    *United States v. Keonne Rodriguez*, S2 24 Cr. 82 (RMB)

Dear Judge Berman:

    The Government writes to oppose Defendant Keonne Rodriguez's request to remove certain bail conditions, including: (1) home incarceration enforced by electronic monitoring; and (2) that the defendant not engage in any cryptocurrency transactions without prior approval of Pretrial Services and the Government (Docket No. 53). The Government incorporates by reference its letter dated July 9, 2024 opposing co-defendant William Lonergan Hill's request to be released on bail pending trial in Portugal (the "July 2024 Bail Opposition"; Docket No. 35). As further discussed below, both of these conditions are necessary to reasonably assure both the safety of the community and the defendant's appearance in future court proceedings.[1]

    **A.  Procedural Background**

    The S2 24 Cr. 82 (RMB) Indictment (the "Indictment") charges the defendant and co-defendant William Lonergan Hill with participating in a money laundering conspiracy, in violation of 18 U.S.C. § 1956(h); and conspiracy to operate an unlicensed money transmitting business, in violation of 18 U.S.C. § 371. These charges relate to the defendants' role in the development, marketing, and operation of a cryptocurrency mixing service known as Samourai Wallet ("Samourai"), an unlicensed money transmitting business from which the defendants earned millions of dollars in fees. Between in or about 2015 and at least in or about February 2024 (when the indictment was returned by the grand jury), Samourai executed anonymous financial transactions valued at over $2 billion in cryptocurrency for its customers, even though the defendants knew that they were facilitating the concealment of criminal proceeds, including from

---

[1] Prior to the filing of the defendant's motion, the parties conferred, and the Government requested that the defendant indicate in his letter that the Government would be requesting two business days to respond to the motion. The defendant's motion—filed the day before today's pretrial conference—failed to include that request.

Page 2 of 8

illegal darkweb markets, cyber intrusions, and fraud. To date, law enforcement has identified at least $100 million in crime proceeds that have been laundered through Samourai—almost certainly a small fraction of the overall amount of cryptocurrency that criminals laundered through the defendants' mixing service.

On April 24, 2024, the defendant was arrested and presented in the Western District of Pennsylvania. On April 29, 2024, the defendant was presented in the Southern District of New York, where the parties agreed on the following conditions of pretrial release, among others: (1) a $1,000,000 personal recognizance bond secured by real property and co-signed by two financially responsible persons; (2) home incarceration enforced by electronic monitoring; (3) travel restricted to the Southern District of New York, the Eastern District of New York, the Western District of Pennsylvania, and all points in-between for travel to court appearances; (4) that the defendant not operate, work for, or perform services for Samourai; and (5) that the defendant not engage in any cryptocurrency transactions, directly or indirectly, without prior approval of Pretrial Services and the Government.

### B. Legal Framework

Under the Bail Reform Act, the district court's task is to "issue an order that, pending trial" directs that the defendant be released or detained. 18 U.S.C. § 3142(a). The district court must order detention if, unlike here, "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1).[2] In assessing whether there are conditions of release "that will reasonably assure the appearance of the person as required and the safety of any other person and the community," the district court considers four factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g). "The court may also consider 'economic harm' as evidence of dangerousness." *United States* v. *Dupree*, 833 F. Supp. 2d 241, 253 (E.D.N.Y. 2011) (quoting *United States* v. *Madoff*, 586 F. Supp. 2d 240, 253 (S.D.N.Y. 2009)).

Here, the Government is not seeking detention. At issue is simply what condition or combination of conditions will reasonably assure the defendant's appearance and the community's safety. In these circumstances, governed by 18 U.S.C. § 3142(c), the district court must order the defendant's pretrial release subject to "the least restrictive further condition, or combination of

---

[2] The Court may order detention based on danger to the community or risk of flight, which are governed by different standards. *See United States v. Epstein*, No. 19-cr-490, 2019 WL 3229190, at *4 (S.D.N.Y. July 18, 2019) (noting that the Court "does not need to find both bases are proven in order to order a defendant's detention"). The Government must show "by clear and convincing evidence that the defendant presents a danger to the community and by the lesser standard of a preponderance of the evidence that the defendant presents a risk of flight." *United States v. English*, 629 F.3d 311, 319 (2d Cir. 2011) (internal quotation marks omitted).

conditions, that such judicial officer determines will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(c)(B).

The Bail Reform Act empowers district courts with considerable flexibility in fashioning a menu of potential pretrial release conditions. Indeed, 18 U.S.C. § 3142(c)(B) provides various conditions that district courts "may" order, including a catch-all provision permitting district courts to order that defendants must "satisfy any other condition that is reasonably necessary to assure the appearance of the person as required and to assure the safety of any other person and the community." 18 U.S.C. § 3142(c)(B)(xiv). In addition to this broad authorization, some of the other potential conditions set forth in the statute are that defendants:

(1) remain in the custody of a designated person, *see* 18 U.S.C. § 3142(c)(B)(i);
(2) maintain or actively seek employment, *see* 18 U.S.C. § 3142(c)(B)(ii);
(3) "maintain or commence an educational program," 18 U.S.C. § 3142(c)(B)(iii);
(4) comply with restrictions on "personal associations, place of abode, or travel," 18 U.S.C. § 3142(c)(B)(iv);
(5) avoid all contact with victims and witnesses, *see* 18 U.S.C. § 3142(c)(B)(v);
(6) report regularly to law enforcement, pretrial services, or any other agency, *see* 18 U.S.C. § 3142(c)(B)(vi);
(7) comply with a curfew, *see* 18 U.S.C. § 3142(c)(B)(vii);
(8) not possess a firearm, destructive device, or dangerous weapon, *see* 18 U.S.C. § 3142(c)(B)(viii);
(9) refrain from unlicensed narcotic use or excessive alcohol use, *see* 18 U.S.C. § 3142(c)(B)(ix);
(10) undergo medical, psychological, or psychiatric treatment, including remaining in an in-patient or psychiatric institution, *see* 18 U.S.C. § 3142(c)(B)(x);
(11) agree to forfeit property if they fail to appear as required, *see* 18 U.S.C. § 3142(c)(B)(xi);
(12) execute a bail bond with solvent sureties, *see* 18 U.S.C. § 3142(c)(B)(xii); and
(13) return to custody at certain times after limited-purpose release, *see* 18 U.S.C. § 3142(c)(B)(xiii).

"[R]easonable release conditions may be imposed to prevent the reoccurrence of criminal conduct for which the accused has been charged. Often it is economic or pecuniary interests of a community rather than physical ones which are most susceptible to repeated danger by a released defendant." *United States v. Harris*, 920 F. Supp. 132, 133 (D. Nev. 1996).

At a bail detention hearing, "[t]he rules concerning admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the hearing." 18 U.S.C. § 3142(f). Thus, "[i]t is well established in this circuit that proffers are permissible both in the bail determination and bail revocation contexts." *United States* v. *LaFontaine*, 210 F.3d 125, 131 (2d Cir. 2000). "[B]ail hearings are typically informal affairs, not substitutes for trial or discovery" and so "courts often base detention decisions on hearsay evidence." *United States v. Abuhamra*, 389 F.3d 309, 321 n.7 (2d Cir. 2004) (internal quotation marks omitted).

### C. Discussion

The Court should deny the defendant's request to remove home incarceration and prior approval for cryptocurrency transactions from his bail conditions. Both of these conditions are necessary to ensure that the defendant not flee in advance of trial and/or commit additional crimes.

*First*, the defendant poses a significant risk of flight, and location monitoring is the only way to reasonably assure that the defendant will not seek to flee in advance of trial. As the Government noted in the July 2024 Bail Opposition, the defendant is charged with extremely serious offenses relating to his role as the CEO and co-founder of Samourai, and he is facing a statutory maximum of 25 years' imprisonment, with a Guidelines range that will likely exceed this statutory maximum after trial. (Docket No. 35 at 2-12). The evidence of the defendant's participation in Samourai—including his knowledge that Samourai was laundering the proceeds of criminal activity—is also overwhelming. At trial, the Government will present the defendant's own words in Samourai's marketing materials, posts on social media, and text messages bragging about how Samourai could be used to evade sanctions, avoid law enforcement detection, and otherwise launder the proceeds of criminal activities. The seriousness of these charges, the strength of the evidence, and the potential penalties after trial all provide very strong incentives for the defendant to flee.

Additionally, there is significant evidence that the defendant's incentives to flee are not merely hypothetical. To the contrary, law enforcement agents recovered from the defendant's home on the date of his arrest a detailed plan to flee from the United States if there were attempts to shut down Samourai and arrest the defendants. Excerpts from the document are depicted below, with "SW" referring to @samouraiwallet (the Twitter username the defendant) and "TD" referring to "tdevd" (the Twitter nickname for co-defendant William Hill):



Aug 9

- Bug out PREP

  • SW → CUBA → Cyprus
  • TD → Cyprus

Passport(s)

- USA ?
- UK ? SW MARCH 2027
- Cyprus !

　　　　　　　DRIVE　　　BOAT
Sw - PA → MIAMI → CUBA

- PA → MIAMI / KEY WEST
  - DRIVE OFF HIGHWAY
  - CASH MOTELS
  - SHITTY GAS STATIONS, CASH ONLY

- MIAMI / KEY WEST → JAMAICA
  - HIRE BOAT & CAPTAIN
    TO GO BY SEA
  - UK PASSPORT

As the above images show, the defendant planned to drive from Pennsylvania ("PA") to Florida ("MIAMI/KEYWEST"), where he would then take a boat to Cuba ("HIRE BOAT & CAPTAIN TO GO BY SEA"). From Cuba, the defendant then planned to travel to Cyprus, where he would meet co-defendant William Hill. The defendant also contemplated that he would use a United Kingdom passport while serving as a fugitive. Without home incarceration enforced by electronic monitoring, there would be no meaningful way for Pretrial Services to know if the defendant had decided to execute this plan until hours or days after the defendant had started to flee. Because of the Government's concerns regarding flight, the Government has insisted that both defendants in this case be subjected to electronic monitoring that would notify law enforcement immediately if the defendants tried to flee.

Finally, the defendant has significant resources to flee, likely stored in cryptocurrency addresses that the Government has been unable to seize. Based on the Government's conservative estimates, Samourai has generated at least $4.5 million in fees, and the large majority of these fees were also laundered through Samourai, which has made it very challenging for the Government to seize any of the profits generated by the defendant's crimes. Because of the pseudo-anonymous and ubiquitous nature of cryptocurrency, the defendant can comfortably live virtually anywhere in the world for decades. Additionally, after the defendant flees from the United States, he will be free to continue operating Samourai (or a variation of Samourai) and continue making millions of dollars from laundering the proceeds of criminal activity. Based on this record, the Court cannot be reasonably assured that the defendant will appear for trial in this case, especially given that trial will likely not happen until sometime in 2025.

The Government also notes that it would not be opposed to considering less extreme bail modifications that would allow the defendant to temporarily leave his residence with the approval of Pretrial Services and the Court, should he need to travel for business or family purposes.

*Second*, the defendant should not be permitted to engage in any totally unsupervised cryptocurrency transactions without the prior approval of Pretrial Services and the Government. The reasonable condition of pretrial release that the defendant "is not to engage in any cryptocurrency transactions, directly or indirectly, without prior approval of [Pretrial Services] and the Government," should not be modified. (Dkt. 10 at 7).

The Indictment alleges that the defendant, Samourai's co-founder and chief executive officer, developed, marketed, and operated Samourai, a cryptocurrency mixing service that executed anonymous financial transactions valued at over $2 billion and laundered over $100 million of crime proceeds. From his role at the top of Samourai, the defendant and his co-defendant earned millions of dollars in fees, estimated to be over $4 million. (Indictment ¶¶ 1-2, 10, 15). The Indictment contains forfeiture allegations and the Government, in the event that the defendant is convicted, will seek to forfeit the defendant's crime proceeds, including "any and all property, real and personal, involved in said offenses, or any property traceable to such property, including but not limited to a sum of money in United States currency representing the amount of property involved in said offenses." (Indictment ¶ 35). This includes the millions of dollars in cryptocurrency that the defendant unlawfully earned from his operation of Samourai. To date, the

Government has not seized the defendant's ill-gotten cryptocurrency gains from his operation of Samourai; they remain in the defendant's possession.

Against this backdrop, where: (1) the defendant earned millions of dollars in forfeitable cryptocurrency from the charged offense conduct, his unlawful operation of Samourai, and the Government and the public have an interest in the defendant not dissipating crime proceeds; (2) the Government, having reviewed the defendant's tax filings, is unaware of any significant income earned by the defendant aside from the crime proceeds he earned from operating Samourai; (3) the defendant's engaging in cryptocurrency transactions is at the heart of the charged offense conduct; and (4) the defendant's use of cryptocurrency is referenced in his escape plan and would facilitate his flight, the reasonable condition of pretrial release that the defendant "is not to engage in any cryptocurrency transactions, directly or indirectly, without prior approval of [Pretrial Services] and the Government," should not be modified, as it is part of the least restrictive set of conditions that will reasonably assure the defendant's appearance and the safety of any other person and the community.  (Dkt. 10 at 7).

Notably, the condition does not bar the defendant from using cryptocurrency to pay for counsel or any other purpose.  It simply requires the defendant to confer with Pretrial Services and the Government in advance of any cryptocurrency transaction and seek their approval. In the event the defendant chooses to use untainted cryptocurrency to pay for counsel or any other purpose, the Government will approve the proposed transaction.  And under the current conditions of release, the defendant is always free to raise with the Court any cryptocurrency transaction that it believes the Government unreasonably declines to approve.  To date, the defendant has not proposed a single cryptocurrency transaction to the Government, highly suggesting that the purpose of this bail modification is to allow the defendant to use crime proceeds to pay counsel.  There is no constitutional right to do so.

Under the circumstances, the existing cryptocurrency conferral condition is amply supported and should not be modified.  Indeed, judges in this District regularly impose wide-ranging and various restrictions on defendants' conduct and ability to engage in financial transactions as part of their pretrial release orders when the restrictions relate to the defendants' offense conduct, including for sophisticated professionals, such as the defendant, when their employment relates to the pending charges.  *See, e.g.*, *United States v. Goyal*, No. 19 Cr. 844 (CS), ECF Dkt. No. 24 at 2 (S.D.N.Y. July 6, 2020) (ordering as part of pretrial release order, in healthcare and bank fraud case, that eye doctor defendant without criminal history "not transfer or sell, or dispose of any asset above two thousand ($2,000) dollars, without leave from Pretrial Services, except for payment towards his monthly mortgage payment, personal medical bills, recurring utilities bills, and recurring insurance payments, which shall not require such leave"; "surrender his license to practice medicine in every state where he is licensed, and not make any new applications"; and "cause his ophthalmology practice . . . to cease operations" and to "not reopen the Practice or any successor practices" and "withdraw from participating with any public or private health insurance payers, and not make any new enrollment applications");*United States v. Mashinsky,* 23 Cr. 347 (JGK), ECF Dkt. No. 6 (July 13, 2023) (restricting cryptocurrency defendant from opening any new financial, business, or personal bank accounts, lines of credit, or

cryptocurrency accounts without the approval or pretrial services); *United States v. Dzhamgarova*, No. 21 Cr. 58 (MKV), ECF Dkt. Nos. 12, 15, 18 (S.D.N.Y. Mar. 4, 2021) (restricting two immigration attorney defendants without criminal history from "perform[ing] any immigration services, practic[ing] immigration law, provid[ing] immigration consultations/advice (i.e., conduct that is at the core of the indictment, which charges . . . immigration fraud), except [defendant] may sign/submit form I4130s for clients' children abroad" and restricting a third immigration fraud defendant without criminal history from "perform[ing] any immigration services, including but not limited to counseling, advice, translation, or otherwise"); *United States v. Dumitru*, No. 18 Cr. 243 (LAK), ECF Dkt. No. 6 at 5 (S.D.N.Y. Mar. 28, 2018) (ordering that attorney defendant without criminal history "shall not accept any new immigration law engagements and shall promptly withdraw or (if required by applicable statutes or regulations) seek leave to withdraw from all existing immigration law engagements"); *United States v. Vigna*, No. 16 Cr. 786 (NSR), ECF Dkt. No. 7 at 2 (S.D.N.Y. Dec. 1, 2016) (ordering attorney defendant without criminal history to "clear current and future representations with the US Attorney's Office"); *United States v. Barrett*, No. 19 Cr. 243 (VB), ECF Dkt. No. 4 at 2 (S.D.N.Y. Apr. 11, 2019) (ordering as part of pretrial release order, in tax fraud case, that tax preparer defendant with no felony convictions "is not to file tax returns on behalf of 3rd parties including using his wife's signature"); *United States v. Williams*, No. 19 Cr. 375 (CS), ECF Dkt. No. 6 at 2 (S.D.N.Y. Nov. 8, 2018) (ordering as part of pretrial release order, in stolen car ring case, that defendant with no criminal history "must not engage in the purchase or sale of motor vehicles"); *United States v. Phillips*, No. 19 Cr. 809 (WHP), ECF Dkt. No. 8 at 6 (S.D.N.Y. Dec. 18, 2019) (ordering as part of pretrial release order, that bank manager defendant charged with bank bribery conspiracy "may not work for a financial institution"); *see also Harris*, 920 F. Supp. at 134-35 (prohibiting, in District of Nevada telemarketing fraud case, defendant from engaging in lawful telemarketing activities even when the employment restriction caused the defendant financial hardship).

For the reasons set forth above, the defendant's conditions of pre-trial release should not be modified.

    Respectfully submitted,

    DAMIAN WILLIAMS
    United States Attorney

By: /s/ _____
    Andrew K. Chan / David R. Felton
    Assistant United States Attorneys
    Tel: (212) 637-1072 / -2299

cc: All counsel (by ECF)