UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE UNITED STATES OF AMERICA,<br><br>-against-<br><br>KEONNE RODRIGUEZ, et al.,<br><br>Defendants. | Case No.: 24 CR. 82 (RMB) |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
KEONNE RODRIGUEZ'S MOTION TO SUPPRESS**

<div style="text-align:right">

Michael Kim Krouse
William T. Sharon
Maya Kouassi
ARNOLD & PORTER
   KAYE SCHOLER LLP
250 West 55th Street
New York, NY 10019-9710
(212) 836-8000
Michael.Krouse@arnoldporter.com

Anthony J. Franze (*pro hac vice* pending)
ARNOLD & PORTER
   KAYE SCHOLER LLP
601 Massachusetts Avenue, NW
Washington, DC 20004
(202) 943-6479
Anthony.Franze@arnoldporter.com

*Attorneys for Defendant Keonne Rodriguez*

</div>

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ...........................................................................................................................1

BACKGROUND .............................................................................................................................2

ARGUMENT ...................................................................................................................................3

I.   The Sixth Amendment Requires The Court To Suppress Evidence Discovered As A Result Of Mr. Rodriguez's Interrogation During His Post-Indictment Arrest ..................................................................................................................................3

II.  The Fifth Amendment Requires The Court To Suppress Evidence Discovered As A Result Of Mr. Rodriguez's Interrogation After He Invoked His Right To Counsel ................................................................................................................................5

CONCLUSION ..............................................................................................................................12

APPENDIX ....................................................................................................................................13

# **TABLE OF AUTHORITIES**

**Cases:** **Page(s):**

*Arizona v. Roberson*,
   486 U.S. 675 (1988) ................................................................................................. 6, 7

*Brewer v. Williams*,
   430 U.S. 387 (1977) ................................................................................................... 3, 4

*Doe v. United States*,
   487 U.S. 201 (1988) ....................................................................................................... 6

*Edwards v. Arizona*,
   451 U.S. 477 (1981) ............................................................................................ *passim*

*Kansas v. Ventris*,
   556 U.S. 586 (2009) ....................................................................................................... 3

*Maine v. Moulton*,
   474 U.S. 159 (1985) ....................................................................................................... 6

*Mara v. Rilling*,
   921 F.3d 48 (2d Cir. 2019) ............................................................................................ 6

*Massiah v. United States*,
   377 U.S. 201 (1964) ....................................................................................................... 5

*McNeil v. Wisconsin*,
   501 U.S. 171 (1991) ....................................................................................................... 7

*Michigan v. Harvey*,
   494 U.S. 344 (1990) ................................................................................................... 3, 5

*Michigan v. Tucker*,
   417 U.S. 433 (1974) ............................................................................................... 10, 12

*Minnick v. Mississippi*,
   498 U.S. 146 (1990) ....................................................................................................... 7

*Miranda v. Arizona*,
   384 U.S. 436 (1966) ......................................................................................... 2, 6, 7, 8

*Nix v. Williams*,
   467 U.S. 431 (1984) ................................................................................................... 4, 5

*Rothgery v. Gillespie Cnty., Tex.*,
    554 U.S. 191 (2008) .................................................................................................. 3, 4

*Smith v. Illinois*,
    469 U.S. 91 (1984) ........................................................................................................ 7

*United States v. Clark*,
    683 F. Supp. 3d 97 (D. Mass. 2023) ............................................................................. 8

*United States v. Crews*,
    445 U.S. 463 (1980) ...................................................................................................... 4

*United States v. Downing*,
    665 F.2d 404 (1st Cir. 1981) ..................................................................................... 8, 12

*United States v. Gilkeson*,
    431 F. Supp. 2d 270 (N.D.N.Y. 2006) ................................................................*passim*

*United States v. Gogic*,
    2025 WL 836493 (E.D.N.Y. Mar. 17, 2025) ............................................................ 4, 5, 6

*United States v. Greenfield*,
    831 F.3d 106 (2d Cir. 2016) ................................................................................. 6, 10, 12

*United States v. Janis*,
    428 U.S. 433 (1976) .................................................................................................... 10

*United States v. Maffei*,
    2019 WL 1864712 (N.D. Cal. Apr. 25, 2019) ............................................................ 3, 5

*United States v. Mills*,
    412 F.3d 325 (2d Cir. 2005) ......................................................................................... 3

*United States v. Morales*,
    2024 WL 220402 (2d Cir. Jan. 22, 2024) ..................................................................... 7

*United States v. Newton*,
    369 F.3d 659 (2d Cir. 2004) ....................................................................................... 10

*United States v. Pinto-Thomaz*,
    352 F. Supp. 3d 287 (S.D.N.Y. 2018) ............................................................ 8, 9, 11, 12

*United States v. Seppala*,
    2017 WL 5633167 (S.D.N.Y. Nov. 22, 2017) ............................................................. 11

*United States v. Shvartsman*,
    722 F. Supp. 3d 276 (S.D.N.Y. 2024) .............................................................. 6, 10, 12

*United States v. Wade*,
    388 U.S. 218 (1967) ..................................................................................................... 4, 5

*United States v. Yan*,
    704 F. Supp. 1207 (S.D.N.Y. 1989) ................................................................................. 8

*Watts v. Indiana*,
    338 U.S. 49 (1949) ......................................................................................................... 11

*Wood v. Ercole*,
    644 F.3d 83 (2d Cir. 2011) ................................................................................... 6, 10, 11

### **Other Authorities**

U.S. Const. amend. V ............................................................................................................. 6

U.S. Const. amend. VI ........................................................................................................... 3

## INTRODUCTION

Law enforcement agents arrested Keonne Rodriguez before sunrise on April 24, 2024 at his home in Pennsylvania. Pursuant to a warrant, they began searching his home. While Mr. Rodriguez was handcuffed in the back of a police car, agents asked him to provide passwords to his electronic devices. Mr. Rodriguez invoked his right to counsel and declined to provide any passwords without first speaking to an attorney. One hour later, law enforcement interrogated Mr. Rodriguez again, this time asking him to provide the PIN for his safe, even though Mr. Rodriguez had not yet spoken to an attorney. When the agent told him that he would simply break the safe if Mr. Rodriguez did not provide the PIN, Mr. Rodriguez complied and provided the numbers. Agents opened the safe and found items including the password to Mr. Rodriguez's server, where they obtained business records for the software application at issue in this case, Samourai Wallet.

This Court should suppress that evidence.

*First*, the agents who arrested and interrogated Mr. Rodriguez violated his Sixth Amendment right to counsel, which attached two months earlier when the Grand Jury in this District returned the indictment and began this prosecution.

*Second*, the agents violated Mr. Rodriguez's rights under *Edwards v. Arizona*, 451 U.S. 477 (1981), which provides that a defendant who "expresse[s] his desire to deal with the police only through counsel" may not be "subject to further interrogation by the authorities until counsel has been made available to him." *Id.* at 484–85.

Cases such as this one—where agents flout clear Supreme Court precedent in an effort to obtain incriminating evidence—are precisely those for which the exclusionary rule was created. Numerous courts have thus suppressed the "fruits" of government interrogations seeking defendants' passwords. This Court should follow suit and suppress the evidence obtained from

1

Mr. Rodriguez's safe, including the contents of his server. In the alternative, it should hold a suppression hearing to determine whether to exclude that evidence.

## BACKGROUND

The original indictment in this case issued on February 14, 2024. *See* Dkt. 4. More than two months later, on April 24, 2024, agents went to Mr. Rodriguez's home at 5:30 a.m., woke him with a megaphone, and arrested him. *See* Declaration of Keonne Rodriguez ("Rodriguez Decl.") ¶ 2. The agents handcuffed Mr. Rodriguez and locked him in the back of a police cruiser. *Id.* ¶ 4. Pursuant to a warrant, they began searching his home. No officer read Mr. Rodriguez his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966). *Id.* ¶¶ 15, 19.

While Mr. Rodriguez was in custody, an agent asked him for the passwords to his phone and computer. *Id.* ¶ 7. Mr. Rodriguez told the agent that he would not provide that information without speaking to an attorney. *Id.* ¶ 8. Another agent then told Mr. Rodriguez to "just make it easy" by giving them the requested information. *Id.* ¶ 9. Mr. Rodriguez again invoked his right to counsel, clarifying that he "would not provide any passwords without first speaking with a lawyer." *Id.* ¶ 10.

Approximately one hour later, another agent approached the car where Mr. Rodriguez was detained. *Id.* ¶ 12. Despite Mr. Rodriguez's invocation of his right to counsel, this agent began another interrogation, and asked for the PIN to the safe in Mr. Rodriguez's home. *Id.* ¶ 13. The agent said that if Mr. Rodriguez did not comply with this demand, agents would break open the safe. *Id.* In the face of this threat, Mr. Rodriguez yielded. Even though he had not yet spoken to an attorney, he provided the agent with the PIN to his safe. *Id.* ¶ 14. Among other things, the safe contained the password to an internet server containing business records for Samourai Wallet. *Id.* ¶ 16. The items seized from Mr. Rodriguez's safe are listed in the Appendix below.

2

**ARGUMENT**

Mr. Rodriguez respectfully requests that the Court suppress the evidence found in his safe and/or obtained using any passcodes it contained, because the agents obtained that evidence by violating Mr. Rodriguez's rights under the Sixth and Fifth Amendments to the U.S. Constitution. In the alternative, Mr. Rodriguez respectfully requests that the Court order a suppression hearing.

**I.    The Sixth Amendment Requires The Court To Suppress Evidence Discovered As A Result Of Mr. Rodriguez's Interrogation During His Post-Indictment Arrest**

"The Sixth Amendment provides that 'in all criminal prosecutions, the accused shall enjoy the right to have the Assistance of Counsel for his defence.'" *United States v. Mills*, 412 F.3d 325, 328 (2d Cir. 2005) (quoting U.S. Const. amend. VI) (cleaned up).  That "right extends to having counsel present at various pretrial 'critical' interactions between the defendant and the State, including the deliberate elicitation by law enforcement officers (and their agents) of statements pertaining to the charge." *Kansas v. Ventris*, 556 U.S. 586, 590 (2009) (citations omitted).  The right to counsel kicks in "once adversary proceedings have commenced against an individual" and "when the government interrogates him." *Brewer v. Williams*, 430 U.S. 387, 401 (1977).

"[F]or purposes of the right to counsel," a prosecution "commence[s]" with "the initiation of adversary judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." *Rothgery v. Gillespie Cnty., Tex.*, 554 U.S. 191, 198 (2008) (quotation marks omitted).  After a defendant has been indicted, therefore, "the Sixth Amendment renders inadmissible in the prosecution's case in chief statements 'deliberately elicited' from a defendant without an express waiver of the right to counsel." *Michigan v. Harvey*, 494 U.S. 344, 348 (1990).

This "exclusionary sanction applies to any 'fruits' of a constitutional violation—whether such evidence be tangible, physical material actually seized in an illegal search, items observed or

3

words overheard in the course of the unlawful activity, or confessions or statements of the accused obtained during an illegal arrest and detention." *United States v. Crews*, 445 U.S. 463, 470 (1980). "[T]he 'fruit of the poisonous tree' doctrine has not been limited to cases in which there has been a Fourth Amendment violation" but also applies "where the violations were of the Sixth Amendment." *Nix v. Williams*, 467 U.S. 431, 442 (1984). Thus, "[d]erivative evidence obtained through a Sixth Amendment violation is generally inadmissible." *United States v. Gogic*, 2025 WL 836493, at *7 (E.D.N.Y. Mar. 17, 2025); *see United States v. Wade*, 388 U.S. 218, 240–41 (1967) (applying exclusionary rule to fruits of Sixth Amendment violation). In *United States v. Maffei*, for example, the court held "that by approaching defendant after [her indictment] and after [she] had unequivocally invoked her right to counsel, and stating 'that he was there to get the passcode for [her] phones,' [a government agent] violated [the] defendant's Sixth Amendment right to counsel," requiring the court to "suppress [not only the] defendant's statement regarding the passcode to her cellphone," but also "the resulting search of her phone, and all evidence subsequently derived from that search." 2019 WL 1864712, at *10 (N.D. Cal. Apr. 25, 2019).

The same result is warranted here. After "proceedings ha[d] commenced against" Mr. Rodriguez, *Brewer*, 430 U.S. at 401, "by way of . . . indictment," *Rothgery*, 554 U.S. at 198, government agents interrogated him without counsel in an effort to obtain his passcodes. By violating Mr. Rodriguez's Sixth Amendment rights, the agents were thus able to extract incriminating information and evidence before he had the opportunity to speak with an attorney.

As discussed, the government indicted Mr. Rodriguez on February 14, 2024, *see* Dkt. 4, and agents arrested him more than two months later. Thus, when he was arrested, "adversary proceedings ha[d] commenced against [him]," and "he ha[d] a right to legal representation when the government interrogate[d] him." *Brewer*, 430 U.S. at 401; *cf. Gogic*, 2025 WL 836493, at *8

4

("There is no doubt that [the defendant's] Sixth Amendment right to counsel had attached at the time of the interrogation, which occurred two days after his October 28, 2022 indictment."). Mr. Rodriguez never "expressly waived his right to counsel," as would have been necessary to override that right. *Gogic*, 2025 WL 836493, at *8; *Harvey*, 494 U.S. at 348 ("[T]he Sixth Amendment renders inadmissible in the prosecution's case in chief statements 'deliberately elicited' from a defendant without an express waiver of the right to counsel."). Even so, the agents who arrested him "deliberately elicited" the PIN "from him after he had been indicted and in the absence of his counsel." *Massiah v. United States*, 377 U.S. 201, 206 (1964). Indeed, they told him to "just make it easy" by providing his PIN without first speaking to an attorney. Rodriguez Decl. ¶ 9; *cf. Gogic*, 2025 WL 836493, at *10 (declining to find "deliberate elicitation" only because the arresting "agents did not act with the purpose of obtaining [the defendant's] passcode").

Only when the agents persisted in questioning Mr. Rodriguez without counsel present, threatening to break open his safe, did he ultimately yield to their demands. Rodriguez Decl. ¶¶ 12–14. The government thus succeeded in obtaining potentially incriminating evidence from Mr. Rodriguez by violating his Sixth Amendment right to counsel. Even if they could have attempted to seize his safe pursuant to a warrant, they did not even try, instead choosing the "easy" alternative of violating his Sixth Amendment rights. Rodriguez Decl. ¶ 9. As a result, the Court should "suppress [his] statement regarding the passcode to [the safe], the resulting search of [the safe], and all evidence subsequently derived from that search." *Maffei*, 2019 WL 1864712, at *10; *see, e.g.*, *Nix*, 467 U.S. at 442; *Gogic*, 2025 WL 836493, at *7; *Wade*, 388 U.S. at 240–41.

**II.    The Fifth Amendment Requires The Court To Suppress Evidence Discovered As A Result Of Mr. Rodriguez's Interrogation After He Invoked His Right To Counsel**

Suppression is independently warranted under *Edwards v. Arizona*, 451 U.S. 477 (1981), which protects a defendant's Fifth Amendment right against self-incrimination.

5

The Fifth Amendment guarantees that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. While "the Sixth Amendment applies only after criminal proceedings have been 'initiated' and 'the adverse positions of government and defendant have solidified,'" *Gogic*, 2025 WL 836493, at *7 (quoting *Maine v. Moulton*, 474 U.S. 159, 170 (1985)), "[t]he Fifth Amendment bars police from coercing incriminating statements at any stage of an investigation," *id.* (citing *Mara v. Rilling*, 921 F.3d 48, 77 (2d Cir. 2019)).

The Fifth Amendment protects a defendant against giving incriminating "testimony" by "disclos[ing] the contents of his own mind." *Doe v. United States*, 487 U.S. 201, 211 (1988). "[R]eveal[ing] the combination to [a] wall safe" amounts to "the expression of the contents of an individual's mind" and thus "is testimonial communication for purposes of the Fifth Amendment." *Id.* at 210 n.9 (cleaned up). "Although [such] passcode[s] [are] not '*directly* or *inherently* self-incriminating,' the Fifth Amendment applies with equal force to" such codes because they are "testimonial statements that 'may lead to incriminating evidence.'" *United States v. Shvartsman*, 722 F. Supp. 3d 276, 317 (S.D.N.Y. 2024) (quoting *United States v. Greenfield*, 831 F.3d 106, 127 (2d Cir. 2016)).

"[T]he right to have counsel present at [an] interrogation is indispensable to the protection of the Fifth Amendment privilege" against self-incrimination. *Arizona v. Roberson*, 486 U.S. 675, 682 n.4 (1988) (quotation marks omitted). Thus, "Fifth Amendment rights entitle a suspect to request the presence of an attorney during custodial interrogation, and require police officers to 'scrupulously honor' the underlying privilege against self-incrimination protected by that request." *Wood v. Ercole*, 644 F.3d 83, 86 n.1 (2d Cir. 2011) (quoting *Miranda*, 384 U.S. at 474, 479) (brackets omitted); *see United States v. Morales*, 2024 WL 220402, at *2 (2d Cir. Jan. 22, 2024) (summary order) ("the Fifth Amendment provides a right to counsel in custodial interrogations"),

6

*cert. denied*, 145 S. Ct. 234 (2024).  To ensure Fifth Amendment protection, a defendant "must be warned prior to any questioning . . . that he has the right to the presence of an attorney." *Miranda*, 384 U.S. at 479.

A defendant who "expresse[s] his desire to deal with the police only through counsel" may not be "subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." *Edwards v. Arizona*, 451 U.S. 477, 484–85 (1981).  "*Edwards* set forth a 'bright-line rule' that *all* questioning must cease after an accused requests counsel." *Smith v. Illinois*, 469 U.S. 91, 98 (1984).  It "reinforce[s] the protections of *Miranda*" by assuring "that once the accused requests counsel, officials may not reinitiate questioning until counsel has been made available to him." *Minnick v. Mississippi*, 498 U.S. 146, 147 (1990) (quotation marks omitted).  "Once a suspect asserts the right, not only must the current interrogation cease, but he may not be approached for further interrogation until counsel has been made available to him—which means . . . that counsel must be present." *McNeil v. Wisconsin*, 501 U.S. 171, 176–77 (1991) (cleaned up); *see Roberson*, 486 U.S. at 682 ("[A]fter a person in custody has expressed his desire to deal with the police only through counsel, he is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." (cleaned up)).  The *Edwards* rule applies "even if [the defendant] has been advised of his rights" and has "responded to further police-initiated custodial interrogation." *Edwards*, 451 U.S. at 484.

The appropriate remedy for an *Edwards* violation is the exclusion of any evidence discovered as a result.  Numerous courts have held that when police officers obtain access to a location or device by improperly questioning a defendant who has invoked the right to counsel,

7

evidence found in that location or on that device is inadmissible "fruit" of the *Edwards* violation. *See, e.g.*, *United States v. Gilkeson*, 431 F. Supp. 2d 270, 292 (N.D.N.Y. 2006) (suppressing evidence found on the defendant's computer after police obtained its location by violating *Edwards*); *United States v. Downing*, 665 F.2d 404, 409 (1st Cir. 1981) ("[A]ny evidence obtained as a result of violating appellee's Fifth Amendment right to have counsel present during interrogation cannot be introduced against him at trial."); *United States v. Clark*, 683 F. Supp. 3d 97, 109 (D. Mass. 2023) ("[T]he exclusionary rule bars all use of the statements and evidence obtained through use of the passcodes."). "Several courts to consider the issue have specifically held that asking a suspect to enter his phone passcode after the suspect has requested an attorney is an *Edwards* violation requiring suppression of the contents of the phone." *United States v. Pinto-Thomaz*, 352 F. Supp. 3d 287, 311 (S.D.N.Y. 2018) (collecting cases). And courts have suppressed "the fruits of [a] search" when police officers obtained consent to search through an *Edwards* violation. *United States v. Yan*, 704 F. Supp. 1207, 1211 (S.D.N.Y. 1989).

*Pinto-Thomaz* illustrates the scope of the exclusionary rule as applied to *Edwards* violations. There, police officers arrested the defendant and advised him of his *Miranda* rights, at which point (according to the defendant) he invoked his right to counsel. *Pinto-Thomaz*, 352 F. Supp. 3d at 310. The officers then sought to execute a search warrant for the defendant's phone and told him the warrant permitted them to unlock the phone should he decline to provide his passcode. *Id.* The defendant provided the code and the officers extracted evidence from the phone.

Before trial, the defendant sought a suppression hearing based on his (alleged) invocation of his right to counsel. The government "argue[d] that a suppression hearing as to whether [the defendant] invoked his right to an attorney [was] unnecessary as, even if [he] had invoked his right to counsel prior to being questioned concerning the passcode, only the passcode, and not the

8


evidence obtained through its use, would be properly suppressed." *Id.* The court disagreed. Endorsing the reasoning of "[s]everal courts to consider the issue," it held that, under *Edwards*, the exclusionary rule applies to the contents of a device obtained by requesting a password from a suspect who has already requested an attorney. *Id.* at 311.

Likewise, in *Gilkeson*, the court suppressed evidence obtained on the defendant's computer after the defendant—who had invoked his right to counsel—gave officers access to the computer. 431 F. Supp. 2d at 292. There, police officers arrested the defendant, read him his rights, and then questioned him at the station. *Id.* at 274–75. Although the defendant asked several times for an attorney, the officers ignored his requests and continued questioning him about the location of his computer. *Id.* Ultimately, the defendant told the officers how to access the office where his computer was located, and he signed a consent-to-search form. *Id.* at 276. The officers went to the defendant's office and found incriminating evidence on his computer.

The defendant moved to suppress that evidence, and the court granted the motion. It emphasized that "[t]he rule that interrogation must cease upon invocation of the right to counsel must be scrupulously honored in a per se manner, regardless of the duration of the questioning." *Id.* at 294. The court explained that the exclusionary rule applies not just to the content of a defendant's statements obtained through an *Edwards* violation, but also to the evidentiary fruits of those statements. *Id.* Thus, "the derivative evidence seized from the defendant at the address of his [office] [was] subject to the fruit doctrine and [was] inadmissible for the prosecution's case in chief." *Id.*

Excluding evidence derived from an *Edwards* violation is particularly crucial when officers interrogate a defendant to obtain a password. "[T]he prime purpose of the [exclusionary] rule, if not the sole one, is to deter future unlawful police conduct." *United States v. Janis*, 428 U.S. 433,

9

446 (1976). The rule "compel[s] respect for the constitutional guaranty in the only effectively available way—by removing the incentive to disregard it." *Michigan v. Tucker*, 417 U.S. 433, 446 (1974). As discussed, "the revelation of a safe combination" is a protected testimonial statement. *Shvartsman*, 722 F. Supp. 3d at 317. Of course, "passcode[s] [are] not '*directly* or *inherently* self-incriminating'"; they are valuable to law enforcement only because they "may lead to incriminating evidence." *Id.* (quoting *Greenfield*, 831 F.3d at 127). Thus, merely excluding a password itself while admitting the "incriminating evidence" to which it leads would be no deterrent at all. The only way to deter agents from obtaining a password from an uncounseled defendant who has requested an attorney is by excluding the evidence the password yields. Otherwise, law enforcement officers would have every incentive to simply disregard *Edwards*.

This Court should therefore suppress the evidentiary fruits of the PIN to Mr. Rodriguez's safe. Mr. Rodriguez was indisputably subject to a "custodial interrogation" when he was handcuffed in the back of the police car during his arrest. *Wood*, 644 F.3d at 86 n.1; *see United States v. Newton*, 369 F.3d 659, 676 (2d Cir. 2004) ("[A] reasonable person finding himself placed in handcuffs by the police would ordinarily conclude that his detention would not necessarily be temporary or brief and that his movements were now totally under the control of the police—in other words, that he was restrained to a degree normally associated with formal arrest and, therefore, in custody."). At that point, he invoked his right to counsel unequivocally, emphasizing that he wanted to first speak with a lawyer before providing any passwords. Rodriguez Decl. ¶ 8; *cf., e.g.*, *Wood*, 644 F.3d at 91 ("The statement 'I think I should get a lawyer' evidences no internal debate whatsoever."); *United States v. Seppala*, 2017 WL 5633167, at *3 (S.D.N.Y. Nov. 22, 2017) ("Seppala unequivocally and unambiguously invoked his right to counsel when he asked, 'Do I have an opportunity to call an attorney?'"). But the arresting officers interrogated him about his

10

passcodes anyway. *See* Rodriguez Decl. ¶ 13. Without counsel to advise him "to make no statement to police" revealing his passwords, *Watts v. Indiana*, 338 U.S. 49, 59 (1949) (Jackson, J., concurring), Mr. Rodriguez ultimately provided the agents with the PIN to his safe, allowing the government to obtain potentially incriminating evidence, *see* Rodriguez Decl. ¶¶ 14–16.

As in *Pinto-Thomaz*, it is not enough to suppress "only the passcode[] and not the evidence obtained through its use." 352 F. Supp. 3d at 310–11. Rather, as in *Gilkeson*, "the derivative evidence seized from" Mr. Rodriguez's safe is "subject to the fruit doctrine and is inadmissible for the prosecution's case in chief." 431 F. Supp. 2d at 294. Indeed, this case epitomizes the rationale for excluding such evidence. Here, the only information the officers sought from Mr. Rodriguez after he invoked his right to counsel was his passwords. Even if they could have attempted to seize his safe and electronic devices lawfully, they did not try. *Cf. Pinto-Thomaz*, 352 F. Supp. 3d at 310 (holding suppression hearing despite officers' insistence that "search warrant gave them permission to use the FaceID feature to unlock the [defendant's] phone if [he] did not provide his passcode"). Instead, they opted to violate *Edwards*.

The only reason the officers asked Mr. Rodriguez for his PIN was so they could find evidence in the safe and use it against him at trial. They knew that if they honored his request to speak to an attorney, he would not provide them with the information they wanted. So to "just make it easy," Rodriguez Decl. ¶ 9, they decided to ignore *Edwards* and continue to demand testimonial information they hoped would "lead to incriminating evidence," *Shvartsman*, 722 F. Supp. 3d at 316 (quoting *Greenfield*, 831 F.3d at 127). But the government cannot take such shortcuts. Without suppression of the fruits of the violations here, law enforcement officers would have every incentive to ignore a defendant's request for counsel when seeking a password to a safe or electronic device. Admitting the evidence would reinforce "the incentive to disregard"

11

*Edwards*. *Tucker*, 417 U.S. at 446. Thus, "[t]he deterrence rationale requires that in addition to suppressing [the password Mr. Rodriguez disclosed], the fruits of [that password] must also be excluded." *Downing*, 665 F.2d at 409; *see, e.g.*, *Pinto-Thomaz*, 352 F. Supp. 3d at 311; *Gilkeson*, 431 F. Supp. 2d at 294.

## CONCLUSION

For the reasons above, the Court should suppress the evidence derived from Mr. Rodriguez providing the PIN to his safe, including the items listed in the Appendix below and any evidence derivatively obtained using passcodes contained in the safe.

Dated:  May 29, 2025

Respectfully submitted,

/s/ Michael Kim Krouse
Michael Kim Krouse
William T. Sharon
Maya Kouassi
ARNOLD & PORTER
   KAYE SCHOLER LLP
250 West 55th Street
New York, NY 10019-9710
(212) 836-8000
Michael.Krouse@arnoldporter.com

Anthony J. Franze (*pro hac vice* pending)
ARNOLD & PORTER
   KAYE SCHOLER LLP
601 Massachusetts Avenue, NW
Washington, DC 20004
(202) 943-6479
Anthony.Franze@arnoldporter.com

*Attorneys for Defendant Keonne Rodriguez*

# APPENDIX

The items seized from Mr. Rodriguez's safe include:

1. A U.S. Passport belonging to Keonne Rodriguez;

2. A U.K. passport belonging to Keonne Rodriguez;

3. An envelope containing a Bitcoin mnemonic;

4. An envelope containing decryption keys;

5. An LG phone;

6. An envelope containing a personal bitcoin passphrase;

7. A deed.