UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>   v.<br><br>KEONNE RODRIGUEZ,<br><br>                Defendant. | No. 1:24-cr-00082-DLC<br><br>Hon. Denise L. Cote<br><br>**SENTENCING MEMORANDUM ON BEHALF OF DEFENDANT KEONNE RODRIGUEZ** |

## PRELIMINARY STATEMENT

We represent Keonne Rodriguez, whom this Court will sentence on November 6, 2025.

Mr. Rodriguez pleaded guilty to one count of conspiring to operate an unlicensed money transmitting business. He entered his plea on July 30, 2025, shortly after this case was reassigned to Your Honor, and over three months before his scheduled trial date. He has accepted full responsibility for his crime. Mr. Rodriguez made a grave mistake and deeply regrets his conduct. He also understands and accepts that he must pay a price, including serving a term in federal prison.

Mr. Rodriguez is 37 years old and has never committed a crime before this case. Until this offense, which stemmed from his creation and operation of Samourai Wallet, he was considered a model citizen as well as a beloved family man. As the many letters written on his behalf attest, Mr. Rodriguez is a thoughtful, honest, kind, and hardworking man who has had an overwhelmingly positive impact on his family, friends, and broader community. Mr. Rodriguez has been in a committed relationship with his wife, Lauren, for 12 years, and they hope someday to raise a family. Both before and after his arrest, Mr. Rodriguez selflessly used his computer coding skills and blockchain tracing abilities to help victims of cryptocurrency theft recover their funds, which is work he hopes to continue after serving in sentence. In short, there is still much

that Mr. Rodriguez can contribute to society, both personally and professionally.  We respectfully submit that Mr. Rodriguez's personal history and characteristics strongly support leniency in this case.

The nature and circumstances of the offense, while serious, also weigh in favor of leniency.  Mr. Rodriguez did not set out to create a tool that would be used to commit money laundering, and he did not enter the Bitcoin industry because he wanted to get rich or defraud others.  In fact, even after Samourai Wallet became successful, Mr. Rodriguez did not live an extravagant lifestyle, choosing instead to remain with his wife and dog in a modest home in Harmony, Pennsylvania.  Rather, Mr. Rodriguez's goal was to build a legitimate and lawful business that would operate openly in the United States, and that would help users enhance the privacy of their transactions.  But over time, Mr. Rodriguez learned and understood that some of those users were storing and transferring Bitcoin derived from criminal activities, and he nonetheless continued operating the business without attempting to prevent the transmission of these funds.  This was criminal conduct that he sincerely regrets.  As Mr. Rodriguez says in his letter to the Court:  "When I chose to plead guilty, it was because I knew it was the right thing to do.  I did not want to waste the Court's time or resources by contesting something that I have come to understand clearly:  I was operating in violation of the law."  Ex. A at 2.  Mr. Rodriguez admits that he became so focused "on solving the technical challenge and defending the principle of privacy" that he "neglected the equally important duty to ensure the product operated fully within the law."  *Id.* at 7.  In assessing the appropriate sentence, we respectfully submit that Mr. Rodriguez's fulsome and timely acceptance of responsibility strongly weigh in favor of leniency.

Finally, a factor in any sentence is the need for deterrence.  Mr. Rodriguez is not a danger to society.  He has no prior criminal record, and he has been out of custody, with a perfect

pretrial services record, for 18 months. Presentence Investigation Report ("PSR") ¶ 5. Mr. Rodriguez's goal upon his release from prison is to apply his "blockchain analytics skills to help prevent fraud, assist in asset recovery, and protect users from exploitation," and to advise other founders on the "importance of integrating legal compliance into innovation from the very beginning." Ex. A at 9. This experience has been a tremendously painful wakeup call to Mr. Rodriguez, and he has been specifically deterred from ever again approaching the line between lawful and unlawful conduct.

While Mr. Rodriguez unreservedly accepts responsibility for his conduct and understands that he will be punished for it, he hopes that he can satisfy his debt to society while still young enough to rebuild a life with his wife, grow his family, and do some good for others. Taking into account all of the factors set forth in Section 3553(a), we respectfully submit that the fair, just, and appropriate sentence in this case is to pay the agreed-upon forfeiture with his co-defendant, and to serve a term of imprisonment of one year and one day, followed by a three-year term of supervised release.

## DISCUSSION

Section 3553(a) requires the Court to fashion a sentence "sufficient, but not greater than necessary," to serve the purposes of sentencing. Although the Sentencing Guidelines are the starting point for the calculation of an appropriate sentence, a district court "may not presume that the Guidelines range is reasonable." *Gall v. United States*, 552 U.S. 38, 50 (2007). Instead, the Court must assess what sentence is reasonable based on all the factors, including: (1) the history and characteristics of the defendant; (2) the nature and circumstances of the offense; (3) the purposes of sentencing, including the need for deterrence and to protect the public; (4) the sentencing guidelines; and (5) the need to avoid unwarranted sentence disparities. 18 U.S.C.

§ 3553(a).  "[T]he amount by which a sentence deviates from the applicable Guidelines range is not a measure of how 'reasonable' a sentence is.  Reasonableness is determined instead by the district court's individualized application of the statutory sentencing factors." *United States v. Dorvee*, 616 F.3d 174, 184 (2d Cir. 2010) (citing *Gall*, 552 U.S. at 46-47).

Under the circumstances of this case, a sentence of five years, as contemplated by the Sentencing Guidelines, would be far too punitive.  That sentence also far exceeds the need for deterrence.  For the reasons described in more detail below, we respectfully submit that a term of imprisonment of one year and one day, followed by a three-year term of supervised release, is "sufficient, but not greater than necessary," to serve the purposes of sentencing.

## I. MR. RODRIGUEZ'S PERSONAL HISTORY AND CHARACTERISTICS STRONGLY SUPPORT LENIENCY

"[I]f ever a [person] is to receive credit for the good he has done, and his immediate conduct assessed in the context of his overall life hitherto, it should be at the moment of his sentencing, when his very future hangs in the balance." *United States v. Adelson*, 441 F. Supp. 2d 506, 513-14 (S.D.N.Y. 2006), *aff'd*, 301 F. App'x. 93 (2d Cir. 2008).  As the many supporting letters attached as Exhibit B reflect, Mr. Rodriguez is a compassionate, hardworking, and kind person with much to give the world and a deep commitment to helping others.  It speaks volumes that his family and friends have stood behind him in the face of his crime and guilty plea.  Mr. Rodriguez's personal history and characteristics strongly favor leniency.

Those who know Mr. Rodriguez the best describe him as a person whose "overarching characteristic is morality, and the conviction to do what is right, even when inconvenient, or costly," Ex. B at 1 (L. Rodriguez Ltr.); someone "who is dependable and always available to offer his support or advice to those that are fortunate enough to know him," *Id.* at 20 (C. Fyock Ltr.); and "a helpful and respectful young man" who "wants good things to happen for people,"

*Id.* at 7 (J. Rodriguez Ltr.).  A close friend, Jeremy Wiles, describes him as a person who has "demonstrated integrity, wisdom, and steadfast support for friends and family over the twenty years I have known him."  *Id.* at 14 (J. Wiles Ltr.).  He is "a wonderful man and son-in-law . . . [who treats] everyone with the utmost respect."  *Id.* at 10 (B. Fyock Ltr.).

      These qualities are not abstract – they are displayed through Mr. Rodriguez's everyday actions.  Mr. Rodriguez's wife, Lauren, recalls the many times he has gone out of his way to help people or animals; not for recognition or fanfare, but because it was the right thing to do.  She describes Mr. Rodriguez stopping at the side of the road to pick up a pregnant woman he saw struggling with groceries on the sidewalk, as well as several instances where he rescued and adopted vulnerable animals.  Ex. B at 1 (L. Rodriguez Ltr.).  His father movingly describes how Mr. Rodriguez supported him through difficult times, including during his fight against cancer and the death of a close friend.  *Id.* at 7 (J. Rodriguez Ltr.).  His mother explains how, even at a young age, Mr. Rodriguez helped her get by after her divorce as she "struggled to make ends meet."  *Id.* at 4 (T. Scott Ltr.).  Mr. Wiles recounts how Mr. Rodriguez "has always been there for me," including by inviting him to live in Florida for two months after his father died.  *Id.* at 14 (J. Wiles Ltr.).  This visit allowed Mr. Wiles to "rest, heal, and share in his life and friendship."  *Id.*

      Several of the letters also describe how Mr. Rodriguez has used this time since his arrest to help the victims of cryptocurrency crimes trace the movement of their funds in order to help in their recovery.  *See, e.g.*, Ex. B at 2 (L. Rodriguez Ltr.).  Notably, however, Mr. Rodriguez's assistance to crime victims did not begin with his arrest.  Richard Messitt's letter describes how he and his father lost their life-savings in 2023 to hackers who stole their personal information and used it to access and empty their Bitcoin wallets.  *Id.* at 11-13 (R. Messitt Ltr.).  Unprompted,

Mr. Rodriguez contacted Mr. Messitt to see if he could help.  Mr. Rodriguez traced the funds as they moved through the blockchain, putting in "hours of complex, tedious and highly skilled work just to help a father and son, whom he had never met[,] just because it was the right thing to do."  *Id.*  Although Mr. Rodriguez's efforts were largely unsuccessful, Mr. Messitt expressed how "Mr. Rodriguez's selfless act of kindness restored" his "faith in humanity."  *Id.* at 12.

His wife Lauren also observes that during the extremely difficult process of being arrested and prosecuted, Mr. Rodriguez "has not skirted away from responsibility, he has not cried out that this is unfair," but instead "has spent time trying to prepare me for the consequences of his actions."  Ex. B at 2 (L. Rodriguez Ltr.).  He has also "demonstrated complete compliance with pretrial services every step of the way – home incarceration, home detention, and curfew restrictions."  *Id.*  It is often said that a person's true character is revealed by how they respond when times are tough.  Mr. Rodriguez has responded to one of the most difficult experiences a person can face with maturity and equanimity.  Instead of feeling sorry for himself, Mr. Rodriguez has spent the time between his arrest and sentencing reflecting on and taking responsibility for his conduct, focusing on his family, and helping others.

Courts in other cases have exercised their discretion to impose non-Guidelines sentences based on the personal characteristics of the defendant.  *E.g.*, *United States v. Gupta*, 904 F. Supp. 2d 349, 353 (S.D.N.Y. 2012) (premising downward variance, in part, on defendant's "big heart and helping hand, which he extended without fanfare or self-promotion, to all with whom he came in contact"); *Adelson*, 441 F. Supp. 2d at 513 (premising downward variance, in part, on letters from "persons from all walks of life . . . attesting, from personal knowledge, to [defendant's] good works and deep humanity," his "generosity of spirit," and his "integrity and generosity").  These considerations also weigh here in favor of substantial leniency.

## II. THE NATURE AND CIRCUMSTANCES OF THE OFFENSE STRONGLY SUPPORT LENIENCY

As reflected in his letter (Ex. A), Mr. Rodriguez does not downplay or minimize his conduct, which was serious and criminal. But unlike many white-collar cases in this Court, the motivation behind Mr. Rodriguez's crime was not greed. Instead, Mr. Rodriguez was initially drawn to this industry, and Bitcoin in particular, because of his deeply held belief in financial privacy and autonomy. Mr. Rodriguez grew up hearing stories of his father's family's flight from Cuba after Fidel Castro's takeover. He learned from those stories that his family's assets in Cuba, including a beverage factory, were seized, and that his family arrived in Miami with very little. This legacy helped shape Mr. Rodriguez's belief in controlling and securing one's own financial assets. So when he first learned about Bitcoin and blockchain technologies, Mr. Rodriguez became fascinated by their ability to give ordinary people a way to store and transfer value without relying on intermediaries.

However, as Your Honor knows, Bitcoin also poses unique privacy concerns, because the blockchain is publicly available. When Bitcoin addresses are tied to a real identity, it becomes possible to trace all of the Bitcoin transactions that owner has ever made, which can allow criminals to identify and steal from a specific wallet. This is the problem Mr. Rodriguez hoped to address by creating Samourai Wallet. From 2015 to 2023, Samourai Wallet was available as a free download on the Google Play store, where it was downloaded at least 100,000 times. Presentence Report ("PSR") ¶ 15. Its purpose was not to help criminals launder money or to make Mr. Rodriguez rich, but to give Bitcoin users the ability to keep their transactions private.

It is worth underscoring that Mr. Rodriguez has not pleaded guilty to the money laundering offense charged in Count One of the Indictment, and the government does not allege that Mr. Rodriguez actively engaged in laundering specific criminal funds. Rather, Mr.

Rodriguez pleaded guilty to conspiring to operate an unlicensed money transmitting business, which involved the transmission of at least some funds that were known to have been derived from a criminal offense. But even as to that charge, the government acknowledges that most Samourai Wallet users were not connected to any criminal activity. Samourai Wallet offered two privacy-related services known as "Whirlpool" and "Ricochet," and approximately $2.3 billion passed through those two services. *Id.* ¶ 16. Of this amount, the government has identified $237 million in crime proceeds that users of Samourai Wallet transmitted in the eight years between 2015 and December 2023. *Id.* ¶ 37. Therefore, approximately 90% of the funds that went through Samourai Wallet had no detectable connection to any criminal activity.[1]

Mr. Rodriguez is not a career criminal motivated by greed. He is a relatively young, self-taught software engineer who made a serious mistake that he knows he must atone for – starting with pleading guilty and accepting his punishment. Under these circumstances, we respectfully submit that leniency is appropriate.

### III.   A GUIDELINES SENTENCE IS NOT NECESSARY TO AFFORD ADEQUATE DETERRENCE OR TO PROTECT THE PUBLIC

Finally, a Guidelines sentence is not necessary "to afford adequate deterrence to criminal conduct" and "protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(2)(B)-(C).

A Guidelines' sentence in this case would not serve the goal of general deterrence of crime. While some a period of incarceration is appropriate, "there is considerable evidence that even relatively short sentences can have a strong deterrent effect on prospective 'white collar'

---

[1] Mr. Rodriguez and his co-defendant have agreed to forfeit what they made from the Whirlpool and Ricochet features, including for transactions the government has not alleged to have involved the proceeds of unlawful activity – approximately $6.4 million. *Id.* ¶¶ 16, 121.

offenders." *Adelson*, 441 F. Supp. 2d at 514. Deterrence "does not require a particularly burdensome penalty, merely one that people would seek to avoid." Mirko Bagaric, *A Rational Theory of Mitigation and Aggravation in Sentencing: Why Less Is More When It Comes to Punishing Criminals*, 62 Buff. L. Rev. 1159, 1205 (2014). Any rational person would seek to avoid the public shaming of an arrest, felony conviction, and sentence that includes time in federal prison. Additional punishment beyond that is unnecessary to achieve general deterrence.

A Guidelines' sentence is also not necessary to specifically deter Mr. Rodriguez. As his father observes, "Keonne is committed to making amends and rebuilding for a better future." Ex. B. at 7 (J. Rodrigez Ltr.). Mr. Rodriguez is not a danger to society or a risk to reoffend. He has no prior criminal record, and he has been out of custody, with a perfect pretrial services record, for 18 months. PSR ¶ 5. Given this experience and based on his personal characteristics, there is no reason to believe Mr. Rodriguez will ever commit another crime. As he emphasizes in his letter to the Court: "When I am released, I intend to live modestly and work only in fully compliant businesses. . . . My goal is to rebuild my life on a foundation of lawful conduct, service to others, and public contribution, so that over time, I can earn back the trust I have lost." Ex. A at 8. As his mother puts it, "[m]y son will accept his punishment with humility and make full amends for his actions. He knows he is just beginning his journey of atonement and reconciliation." Ex. B at 5 (T. Scott Ltr.).

## **CONCLUSION**

The fair, just, and appropriate sentence in this case is one year and one day in prison, followed by a three-year term of supervised release. This sentence will fully capture the

retributive and deterrent goals of sentencing, while also taking into account Mr. Rodriguez's personal characteristics and qualities, and the nature and circumstances of the offense.

Dated: New York, New York
October 24, 2025

**ARNOLD & PORTER KAYE SCHOLER LLP**

*/s/ Michael Kim Krouse*
Michael Kim Krouse
Maya Kouassi
250 West 55th Street
New York, NY 10019-9710
(212) 836-8000
Michael.krouse@arnoldporter.com
Maya.kouassi@arnoldporter.com

*Attorneys for Defendant Keonne Rodriguez*